Liston F. Coon, S.
The deceased herein died on December 2, 1960. Prior thereto he had executed two promissory notes to the Tompkins County Trust Company (hereinafter referred to as Trust Company) totaling $3,000, both due on December 23, 1960 and both secured by chattel mortgages on a herd of Angus cattle. Following decedent’s death and on or about December 6, 1960, his wife, who was subsequently appointed executrix, received permission from the Trust Company to sell the cattle. The same were ultimately sold and the net proceeds, which exceeded the amount of the notes in question, were deposited in an estate account in the Trust Company. A tender of payment for the notes was made to the Trust Company by the executrix, which was refused on the grounds that the decedent owed other unsecured indebtedness to the Trust Company which claimed, pursuant to the terms of the chattel mortgages, a setoff against the estate account and a preference, since the assets left by decedent were insufficient to pay the claims of all of the creditors. The rights and liabilities of the respective parties have been submitted to the court on this accounting.
Counsel for the Trust Company and for the estate have advanced various legal arguments why each should prevail in their contentions. The crucial issue, to this court, seems to be the nature and extent of the consent granted by the mortgagee bank for the sale of the cattle in question and the court has required testimony on this point.
As a general rule the consent of a mortgagee to the sale of the secured property destroys the lien of the mortgage. (10 Am. Jur., Chattel Mortgages, § 192, p. 842.) There is little law on the subject in this State but the stated general rule has been followed [Rickerson v. Raeder, 1 Keyes 492, 4 Abb. Ct. App. 60).
However, the sale by the mortgagor must be within the terms of the consent (Arnold v. First Nat. Bank of Cripple Creek, 96 Col. 104; Ann. 97 A. L. R. 643, 646), and where an oral consent is given, as here, certain complexities arise as to the true intentions of the parties at the time of the granting of the consent. (Ziegler v. Ilfeld, 52 Col. 275.)
The facts established herein show that when decedent’s widow was given the consent to sell on or about December 6, 1960, the notes in question were not due. She was not advised as to when they would be due.
Upon the facts in this case, the court finds that the consent to sell given by the Trust Company indicated an intent that the cattle should be sold and from the proceeds that the notes be *701 paid and that, except as to the payment of those two secured notes, the Trust Company’s consent and acquiescence waived the lien of the mortgage.
There is no convincing showing that the Trust Company intended that any surplus should he regarded as a setoff against any other indebtedness of the decedent. In fact at the time of the consent to sell, the Trust Company held as collateral security certain stock certificates pledged by the decedent to cover the other indebtedness. These the Trust Company subsequently released because of decedent’s alleged lack of authority to pledge said securities.
Now the Trust Company, having released the securities, seeks to impose provisions of the chattel mortgages to protect the other loans.
In its brief, the Trust Company sets forth the proposition that by reason of the default, absolute title vested in the bank (citing Leadbetter v. Leadbetter, 125 N. Y. 290), and when the sale took place, any equity of redemption was cut off (citing Harrison v. Hall, 239 N. Y. 51). If that was the Trust Company’s position at the time of the consent, then why did they grant any consent of sale to decedent’s widow! She had nothing to gain by selling if her equity of redemption would thereby be lost. The Trust Company admits that it was impractical for it to maintain the herd, so if it gave the consent for the widow to perform acts for them with respect to property to which the Trust Company could claim absolute title, it was not acting in good faith towards the decedent’s estate and the widow.
The question still remains as to whether or not the Trust Company has a general right of setoff against the funds in its custody because of additional indebtedness to the Trust Company.
The executrix deposited the proceeds of the cattle sale in the Trust Company in an estate account. It is not shown that decedent previously had a deposit account with the Trust Company. Thus there existed no debtor and creditor relationship between the executrix and the Trust Company (Jordan v. National Shoe & Leather Bank, 74 N. Y. 467). There is no basis for a claim of setoff against the estate bank account. (Bank of Jamestown v. Cattaraugus County Bank, 241 App. Div. 550, affd. 267 N. Y. 542; Matter of Greenwald, 143 N. Y. S. 2d 464.)
The Trust Company is entitled to a preference to the extent of the notes which were secured by the chattel mortgages on *702 the cattle in the sum of $3,034.32. As to the balance now on deposit with the Trust Company, it must share with the general creditors.
Counsel for the estate has requested that his fee be fixed in this accounting and it is fixed at $2,200 plus actual disbursements, less any advance previously made.